# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA NEWTON, | 1:07cv1405 AWI DLB |
| Plaintiff, | FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

**BACKGROUND**

Plaintiff Theresa Newton ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendation to the District Court.

**FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff filed her applications on January 24, 2005, alleging disability since January 1, 2003, due to emotional stress, depression, neurofibromatosis, neuropathy and tendonitis in her

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

hands and fingers.  AR 87-89, 95-101.  After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 37, 66-70, 74-78.  ALJ Michael Haubner held a hearing on March 8, 2007.  AR 295-335.  He issued a decision denying benefits on April 26, 2007.  AR 11-23.  On July 28, 2007, the Appeals Council denied review.  AR 5-9.

<u>Hearing Testimony</u>

ALJ Haubner held a hearing on March 8, 2007, in Fresno, California.  Plaintiff appeared with her attorney, Robert Ishikawa.  Vocational expert ("VE") Thomas Dachelet also appeared and testified.  AR 295.

Plaintiff testified that she was born in 1949 and completed the twelfth grade.  She also graduated from cosmetology school in 1989 but never worked in the field.  AR 304.  In 1999, she demonstrated food for Costco.  AR 305.  She also babysits her three-year old grandson five days a week, eight hours a day, with the help of her son.  AR 306.  Her son is disabled and receives SSI.  AR 307.  She helps her grandson get dressed, helps him bathe and performs simple meal preparation.  AR 308.  She does dishes once a day and goes grocery shopping once a week.  She last visited with friends and family outside of her home five years ago.  AR 309.  She drives an average of once per week.  AR 310.  She last did laundry about a year ago and does not do housework.  AR 311.  In addition to watching her grandson, Plaintiff watches an average of 12 hours of television a day.  AR 312.  Plaintiff testified that she is able to take care of her personal needs but has trouble putting on her pants.  AR 314.

In addition to neurofibromatosis, mid and low back osteoarthritis with back pain and radiculopathy, Plaintiff suffers from neuropathy in her hip and right leg.  AR 315.  She estimated that she lays down on and off throughout the day, for a total of 8 to12 hours.  AR 316-317.  Plaintiff sees her family practitioner once every three months and also sees a mental health professional every four weeks.  AR 317.

Plaintiff believed that she could lift and carry five pounds and could walk about 100 feet before needing to sit down and rest.  She can sit for 15 minutes before she has to get up and can stand for 15 minutes.  AR 318.  She has difficulty grasping and gripping with her right hand and

thought she could hold a coffee cup for five minutes, at most, before needing to rest her hand for an hour. AR 318.

Plaintiff explained that she also has constant pain in her leg, right knee and groin, and middle and lower back, which she rates as a ten. She has not been to the emergency room for treatment in the last four years. AR 319-320.

Plaintiff further testified that she could concentrate for two hours, at most. AR 328.

As to Plaintiff's neurofibromatosis, Plaintiff testified that she grows tumors on her face and body. The tumors hurt "like a slap in the face," and causes constant pain. AR 331-332. She is able to sleep for two to three hours a night because of the pain. She takes Vicodin twice a day and it does not cause side effects. AR 333. She does nothing else for the pain. AR 334. The pain has worsened and her doctor plans to send her to a neurologist. AR 334.

For the first hypothetical question, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience. This person could lift and carry 100 pounds occasionally and 50 pounds frequently. This person could not perform frequent climbing of stairs or walking on uneven terrain and also had to avoid frequent bending, stooping, kneeling and crouching. The VE testified that this person could perform Plaintiff's past relevant work as well as other jobs in the national economy. AR 323-324. Examples of possible jobs include hand packer, line service attendant and extractor operator. AR 325.

For the second hypothetical, the ALJ asked the VE to assume a person who could lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk about six hours and sit for about six hours. This person could never climb ladders, ropes and scaffolds but could occasionally climb stairs, balance, stoop, kneel and crouch. This person had to avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery. The VE testified that this person could perform Plaintiff's past relevant work, as well as the full world of sedentary and light, unskilled positions. AR 325-326.

For the third hypothetical, the ALJ asked the VE to assume a person who was mildly limited in the ability to complete a normal work day. The VE responded that the limitation was probably too "nebulous" but thought that it might close the world of work. AR 326-327.

3

1          Plaintiff's attorney questioned the VE about the meaning of "mild," and asked him to
2   assume that it meant "an impairment which mildly limits the individual's ability to perform
3   designated activity on a regular and sustained basis, i.e., eight hours a day, five days a week."
4   The VE responded that all work would be closed. AR 329.
5          If this person could not perform activities within a schedule, maintain regular attendance
6   or be punctual, she could not perform any work. AR 327.
7          The ALJ next asked the VE to assume a person who could lift and carry five pounds,
8   walk 100 feet at a time, sit for 15 minutes and stand for 15 minutes, and grip/grasp for five
9   minutes at time. This person would also need to recline for eight hours. The VE testified that
10  this person could not perform any work. AR 327.
11         Plaintiff's attorney asked the VE to assume a person who could sit for one hour, stand for
12  15 minutes and walk for one hour. This person must lie down seven to eight hours a day. The
13  VE testified that there would be no work available. AR 330.
14         Medical Evidence[2]
15         Plaintiff saw V.A. Reyes, M.D., on January 28, 2003. Plaintiff was having a "tough"
16  time at work and was put on a one-month leave. She indicated that she was taking Zoloft and
17  was getting a little better. Plaintiff also had pain and swelling in her fifth phalanx on her right
18  hand. Dr. Reyes assessed acute tenosynovitis and injected Xylocaine. AR 162.
19         On February 26, 2003, Plaintiff returned to Dr. Reyes for emotional stress, anxiety and
20  depression. She was stable and doing better, although she still had some panic attacks and
21  "dread[ed]. . .fac[ing] the people she used to work with." Dr. Reyes recommended that Plaintiff
22  be off work another month and if this wasn't possible, she would have to find another job
23  "suitable for her to prevent emotional stress." AR 161.
24         On March 28, 2003, Plaintiff saw Dr. Reyes for continued complaints of "emotional
25  stress as a result of working conditions." Dr. Reyes felt that Plaintiff was under a lot of stress,
26
27  _____
28         [2] As Plaintiff's arguments deal solely with her mental impairment and do not dispute the ALJ's physical findings, the Court will focus on the mental health evidence.

1  but that she could try returning to work on April 1, 2003.  He instructed her to continue Zoloft.
2  AR 160.
3         On March 28, 2005, State Agency physician Evangeline Murillo, M.D., completed a
4  Psychiatric Review Technique form.  She opined that Plaintiff did not have a medically
5  determinable impairment.  AR 183.
6         From November 2005 through January 2006, Plaintiff sought treatment from Dr.
7  Alvarado for pain in her right leg.  AR 268-270.  On January 31, 2006, he assessed her with
8  anxiety and prescribed Zoloft.  AR 268.
9         On April 6, 2006, Plaintiff saw Kenneth Bernstein, M.D., for complaints of right leg pain.
10 She also complained of depression and bouts of crying.  Plaintiff had been taking Zoloft for
11 about a month.  Dr. Bernstein diagnosed neurofibromatosis, depression, fibromyalgia and
12 hyperlipidemia, and referred Plaintiff to Cesar Velasquez, a Licensed Clinical Social Worker.
13 Plaintiff was instructed to continue Zoloft.  AR 222.
14        On May 9, 2006, Plaintiff saw Mr. Velasquez.  She reported feeling more and more
15 depressed over the years due to her medical condition.  She also reported low self-esteem,
16 impaired sleep, hopelessness and agitation, but reported that Zoloft was helpful.  Mr. Velasquez
17 diagnosed depression and explored coping mechanisms "to improve her mobility to be active
18 with her grandchild."  AR 267.
19        On May 31, 2006, Plaintiff reported that she was having difficulty accepting her physical
20 limitations and was frustrated with SSI.  AR 265.
21        On June 14, 2006, Plaintiff reported poor sleep and increased anxiety over her medical
22 issues, including pain in her wrists.  AR 264.
23        In July 2006, Plaintiff reported that she was "tired and overwhelmed with all the
24 problems in her life."  AR 262.  Two weeks later, she reported "some improvement in her self-
25 esteem" and was more hopeful about the future.  AR 261.
26        On October 3, 2006, Plaintiff reported that she was having good results on Prozac while
27 she awaited patient assistance to obtain Zoloft.  Plaintiff's son reported that she had a tendency to
28 "overdo things" and become overly tired for the next couple of days.  AR 255.

On November 8, 2006, Plaintiff reported continued difficulty with sleep and anxiety, although her anxiety has lessened with the increased dosage of Zoloft. She was prescribed Ambien. AR 251.

On December 20, 2006, Plaintiff saw Mr. Velasquez and reported "some improvement" because she had been able to discuss her relationship with her grandson. Her stress appeared to be related to custody issues with her grandson. AR 245.

Plaintiff returned to Mr. Velasquez on January 17, 2007. She reported some improvement in her sleep and she had switched to an over-the-counter sleep aid, rather than a prescription. She also reported "feeling better as the custody issues concerning her grandchild appear to be working out in the best interest of the child." AR 243.

On February 20, 2007, Dr. Bernstein completed Medical Source Statement as to the Severity of Plaintiff's mental impairment. He opined that she was mildly limited in her ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Plaintiff was not significantly limited in all other categories. Dr. Bernstein concluded that Plaintiff had "no mental problems." AR 271-273.

ALJ's Findings

The ALJ determined that Plaintiff's neurofibromatosis, minimal osteoarthritis of the lumbar spine and deformity of the T-12 vertebra, with complaints of back pain and subjective radiculopathy, were severe impairments. AR 16. He found that Plaintiff retained the residual functional capacity ("RFC") to lift 100 pounds occasionally and 50 pounds frequently. She had no sitting, standing or walking limitations, but had restrictions with activities involving climbing, balancing, working at heights, and frequent negotiation of steps, stairs and uneven terrain. She may also have restrictions with activities involving frequent bending, stooping, kneeling and crouching. Given these restrictions, the RFC would still allow for a restricted range of medium work. AR 17. Based on the testimony of the VE, the ALJ determined that Plaintiff could perform her past relevant work as a food demonstrator. Alternatively, the ALJ found that Plaintiff could perform a significant number of other jobs in the national economy. AR 21-22.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Here, the ALJ determined that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (neurofibromatosis, minimal osteoarthritis of the lumbar spine and deformity of the T-12 vertebra, with complaints of back pain and subjective radiculopathy) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) can perform her past relevant work as a food demonstrator; and alternatively, (5) retains the RFC to perform a significant number of jobs in the national economy.  AR 16-23.

Here, Plaintiff argues that the ALJ (1) erred in finding that her depression was non-severe; and (2) improperly evaluated Dr. Bernstein's opinion.

## DISCUSSION

A.    Plaintiff's Mental Impairment

Plaintiff first argues that the ALJ erred by finding her depression to be non-severe.  In support of her argument, she cites Dr. Bernstein's opinion that her depression has a "mild" limitation in her ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

Plaintiff bears the burden of proving that she is disabled.  *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512.  A person is disabled if her impairments are severe and meet the durational requirement of twelve months.  20 C.F.R. §§ 404.1505, 404,1520(a).  A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting.  20 C.F.R. § 404.1521(b).

An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at step two if the medical evidence establishes only a slight abnormality or a

1  combination of slight abnormalities which would have no more than a minimal effect on an
2  individual's ability to work, even if the individual's age, education, or work experience were
3  specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his
4  or her physical or mental ability(ies) to perform basic work activities).  SSR 85-28.  In
5  determining whether an impairment or combination of impairments is "severe," an ALJ should
6  carefully examine the medical findings that describe the impairments and make an "informed
7  judgment" about the limitations and restrictions the impairment and related symptoms impose on
8  the person's physical and mental ability to do basis work activities.  SSR 96-3p.

9       In his decision, the ALJ found Plaintiff's depression to be non-severe, explaining that it
10 was controlled by medication and has a minimal effect on her ability to work.  AR 16.  Indeed,
11 the medical record shows that Plaintiff's depression mostly controlled by medication.  AR 160,
12 161, 162, 243, 245, 251, 255, 261.  Impairments that can be controlled effectively with
13 medication are not disabling for the purpose of determining eligibility for benefits, and such a
14 controlled condition would therefore likely be considered non-severe.  *Warre v. Comm'r Soc.*
15 *Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006).  Moreover, State Agency physician Murillo reviewed
16 Plaintiff's medical records and found that she did not have a significant mental impairment.  AR
17 182-194.  The opinions of non-treating physicians are substantial evidence where they are
18 supported by clinical findings and objective tests.  *See Magallanes v. Bowen*, 881 F.2d 747, 751
19 (9th Cir. 1989).

20      Although Plaintiff cites Dr. Bernstein's finding of a "mild" limitation in her ability to
21 complete a normal workday, this does not necessarily translate into a finding that her depression
22 is a severe impairment.  A non-severe impairment has no more than a minimal effect on a
23 person's abilities to perform basic work activities.  Dr. Bernstein's opinion, even if valid, does
24 not establish more than a minimal impact on basic work activities.  In fact, limitations rated as
25 "mild" on the Psychiatric Review Technique form, which uses a rating system similar to the one
26 used on the form completed by Dr. Bernstein, are generally found to be non-severe unless the
27 evidence suggests otherwise.  20 C.F.R. § 404.1520a(d)(1).
28

1          The ALJ's determination that Plaintiff's depression was non-severe was free of legal error
2   and supported by substantial evidence.
3   B.      Dr. Bernstein's Opinion
4          In a related argument, Plaintiff contends that the ALJ improperly rejected Dr. Bernstein's
5   finding that she was "mildly" limited in her ability to complete a normal workday.  She contends
6   that the ALJ erred in giving great weight to State Agency physician Murillo, who opined that
7   Plaintiff did not have a severe mental impairment.
8          Cases in this circuit distinguish among the opinions of three types of physicians: (1) those
9   who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant
10  (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining
11  physicians).  As a general rule, more weight should be given to the opinion of a treating source
12  than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,
13  647 (9th Cir.1987).  At least where the treating doctor's opinion is not contradicted by another
14  doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d
15  1391, 1396 (9th Cir.1991).  Even if the treating doctor's opinion is contradicted by another
16  doctor, the Commissioner may not reject this opinion without providing "specific and legitimate
17  reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722
18  F.2d 499, 502 (9th Cir.1983).
19         The opinion of an examining physician is, in turn, entitled to greater weight than the
20  opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990);
21  *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a treating
22  physician, the Commissioner must provide "clear and convincing" reasons for rejecting the
23  uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506.  And like the opinion
24  of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,
25  can only be rejected for specific and legitimate reasons that are supported by substantial evidence
26  in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).
27         The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence
28  that justifies the rejection of the opinion of either an examining physician or a treating physician.

*Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

In rejecting Dr. Bernstein's opinion, the ALJ first explained that the form lacked objective support, such as signs and tests results, and did not indicate whether the limitation was based on Plaintiff subjective complaints. For example, there is no evidence that Dr. Bernstein performed a mental status examination. In fact, it appears that he treated her mainly for her physical problems. A brief and conclusionary form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). The ALJ attempted to gather additional information from Dr. Bernstein to help in his assessment but Dr. Bernstein did not respond to the ALJ's requests.[3] AR 19.

Additionally, Dr. Bernstein's opinion was inherently inconsistent. Although her credited her depression for causing "mild" limitations in her ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods, he noted on the same form that Plaintiff had "no mental problems." AR 273.

---

[3] As Defendant points out, Dr. Bernstein later supplied further information to the Appeals Council by way of a letter dated March 9, 2007, in which he states that Plaintiff's depression "impairs her ability to perform daily work on a consistent basis." AR 281. The Appeals Council rejected the opinion and Plaintiff does not dispute the finding.

1    Plaintiff characterizes Dr. Bernstein's opinion as uncontradicted and argues that the ALJ
2 was therefore wrong to adopt the State Agency physician's opinion. However, for the reasons
3 explained above, Dr. Bernstein's opinion was not supported in the first instance, making the
4 ALJ's adoption of Dr. Murillo's opinion proper.
5    In any event, as the Court touched upon in rejecting Plaintiff's first argument, even if the
6 ALJ accepted Dr. Bernstein's opinion that she was "mildly" limited in certain areas, it would
7 have still resulted in a finding that her depression was non-severe. 20 C.F.R. § 404.1520a(d)(1).
8 To the extent that Plaintiff's argument is based on the VE's testimony that the world of work is
9 closed for someone with Dr. Bernstein's mild limitation, it appears that the VE misunderstood
10 either the hypothetical or the definition of "mild."
11    The ALJ's rejection of Dr. Bernstein's opinion is therefore supported by substantial
12 evidence and free of legal error.

### RECOMMENDATION

14    Based on the foregoing, the Court finds that the ALJ's decision is supported by
15 substantial evidence and is based on proper legal standards. Accordingly, the Court
16 RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of
17 Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue
18 and against Plaintiff Theresa Newton.
19    These findings and recommendations will be submitted to the Honorable Anthony W.
20 Ishii pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being
21 served with these findings and recommendations, the parties may file written objections with the
22 court. The document should be captioned "Objections to Magistrate Judge's Findings
23 and Recommendations." The parties are advised that failure to file objections within the
24 specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951
25 F.2d 1153 (9th Cir. 1991).
26    IT IS SO ORDERED.
27    Dated:   **October 17, 2008**            /s/ **Dennis L. Beck**
                                         UNITED STATES MAGISTRATE JUDGE
28